THE STATE OF OHIO, APPELLEE, *v.* COWANS, APPELLANT.

[Cite as State v. Cowans, 10 Ohio St. 2d 96.]

(No. 40202—Decided April 19, 1967.)

99

*Mr. C. Howard Johnson*, prosecuting attorney, and *Mr. James A. Pearson*, for appellee.
*Mr. William J. Davis*, for appellant.

HERBERT, J.   The defendant-appellant claims that the trial court erred in admitting into evidence (1) the January confession, (2) the February confession, and (3) the rebuttal testimony of a police officer.   The claims will be considered in that order.

The January confession is attacked as (a) the product of an illegal detention, *McNabb* v. *United States*, 318 U. S. 332 (1943), and *Mallory* v. *United States*, 354 U. S. 449 (1957); (b) the product of an infringement of defendant's right to silence and right to counsel, *Escobedo* v. *Illinois*, 378 U. S. 478 (1964), and *Miranda* v. *Arizona*, 384 U. S. 436 (1966); and (c) the product of an overborne mind, *e. g., Davis* v. *North Carolina*, 16 L. Ed. 2d 895 (1966).

In *McNabb* and in *Mallory*, the United States Supreme Court held that a confession obtained after an "unnecessary delay" by the police in the arraignment of the accused is inadmissible.   However, the Supreme Court has clearly held that the *McNabb-Mallory* exclusionary rule is a gloss on Rule 5(a) of the Federal Rules of Criminal Procedure and has no application to state proceedings, *e. g., Gallegos* v. *Nebraska*. 342 U. S. 55, 63-64 (1951).   Hence, the *McNabb-Mallory* rule is not available to the defendant.

In *Escobedo* and in *Miranda*, the United States Supreme Court held that where the police obtain a confession from the accused as the result of in-custody interrogation and after a denial of his right to counsel and right to silence, such confession may not be used at the trial. In *Escobedo*, the police refused to allow the accused to consult with his counsel. In *Miranda,* the police failed to inform the accused of his rights. However, here it is not material whether the police denied the accused his rights by misfeasance (*Escobedo*) or by nonfeasance (*Miranda*) or whether they denied them at all, for in *Johnson* v. *New Jersey*, 16 L. Ed. 2d 882 (1966), the Supreme Court held that the *Escobedo* rule applies only to trials begun after the promulgation of that decision—June 22, 1964, and that the *Miranda* rule likewise applies only to trials begun after the promulgation of that decision—June 13, 1966. The trial in the case at bar began on April 23, 1964. Hence the exclusionary rules of *Escobedo* and *Miranda* are not available to the defendant. See *State* v. *Carder*, 9 Ohio St. 2d 1 (1966).

In *Davis* v. *North Carolina, supra* (16 L. Ed. 2d 895), at 898, the United States Supreme Court held that ''the fact that a defendant was not advised of his right to remain silent or of his right respecting counsel at the outset of interrogation, as is now required by *Miranda,* is a significant factor in considering the voluntariness of statements later made.'' Under *Miranda,* where there is an interrogation in the absence of counsel which brings forth a confession, ''a heavy burden rests on the Government to demonstrate that the defendant knowingly and intelligently waived'' his rights.

Even though the state did not meet that burden on the present record, we cannot say that the January confession was the product of an overborne mind. The police ignored the accused for two days and then on the third day questioned him for four hours. Even though he may have been underfed, we do not believe that the aggregation of coercive influences was sufficient to impair the defendant's ability to make a ''free'' and ''rational'' choice. In determining whether the coercive influences of in-custody interrogation have been ''too coercive'' in the particular case, the Supreme Court has focused primarily on the length of detention and the peculiar mental infirmities and inadequacies of the accused. But in the case at bar the

interrogation that produced the January confession took place over a period of four hours, far short of the 16 hours in *Haynes* v. *Washington*, 373 U. S. 503 (1963) (confession inadmissible); or the day and a half in *Stein* v. *New York*, 346 U. S. 156 (1953) (confession admissible), overruled on other grounds in *Jackson* v. *Denno, Warden*, 378 U. S. 368 (1964); or the 36 hours in *Ash-* *craft* v. *Tennessee*, 322 U. S. 143 (1944); or the three days in *Harris* v. *South Carolina*, 338 U. S. 68 (1949); or the five days in *Turner* v. *Pennsylvania*, 338 U. S. 62 (1949); or the six days in *Watts* v. *Indiana*, 338 U. S. 49 (1949); or the 16 days in *Davis* v. *North Carolina, supra*. Nor is there any indication that the defendant was suffering from some mental infirmity, as were the defendants in *Davis* v. *North Carolina* (low intelligence) and in *Culombe* v. *Connecticut*, 367 U. S. 568 (1961) ("mental defective of the moron class"). Nor is the defendant a child of tender years unable to evaluate his choice to confess or not as in *Gallegos* v. *Colorado*, 370 U. S. 49 (1962), and in *Haley* v. *Ohio*, 332 U. S. 596 (1948).

We are cognizant of the fact that the interrogation in *Gallegos* and *Haley* were of short duration. However, the court in both cases made it clear that the age of the suspect and not the length of the interrogation was controlling. The court, in *Haley*, at page 599 said:

"* * * Age 15 is a tender and difficult age for a boy of any race. He cannot be judged by the more exacting standards of maturity. That which would leave a man cold and unimpressed can overawe and overwhelm a lad in his early teens."

The defendant in the case before us is no lad of tender years. He is an adult. A four-hour interrogation would not deprive him of his rational faculties. The decision in *Haley* buttresses rather than undermines this conclusion.

Although there is a brief mention in the record that during the January interrogation the police promised to be lenient if the accused co-operated and confessed, there is no indication that any bargain was made, nor does the defendant claim any. Cf. *Lynumn* v. *Illinois*, 372 U. S. 528 (1963).

Whether a confession is voluntary or not is not subject to mathematical calculation. Rather a court must look at all the attendant circumstances to determine the psychological impact of the coercive influences on the suspect's ability to make a free

and rational choice, *Haynes* v. *Washington, supra.* Under the circumstances of this case, as related in the record, the fact that the *Miranda* requirements were not met, the fact that the defendant was inadequately fed, and the fact that the interrogation was four hours long are not, of themselves, indicative of "an atmosphere of substantial coercion and inducement." Thus the admission of testimony relating to this, the January confession, did not violate the due process clause of the Fourteenth Amendment.

The February confession is attacked on the same three bases as the January confession. It is also attacked as a post-indictment confession obtained in the absence of counsel: *Massiah* v. *United States*, 377 U. S. 201 (1964); *McLeod* v. *Ohio*, 381 U. S. 356 (1965).

The last claim will be considered first. In *Massiah*, the United States Supreme Court held that postindictment confessions obtained in the absence of counsel were inadmissible at trial as violative of the Sixth Amendment's right to counsel. The court said, at page 206:

"* * * We hold that the petitioner was denied the basic protections of that guarantee [the Sixth Amendment] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel. * * *"

The court, at page 205, cited with approval a series of New York decisions that held, in accordance with the "constitutional rule," that " 'any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime.' "

That the *Massiah* mandate was equally applicable to state prosecutions and that it applied retrospectively to cases pending on appeal were made clear in *McLeod*. When that case was presented to this court, *State* v. *McLeod*, 1 Ohio St. 2d 60 (1964), on remand from the United States Supreme Court in light of *Massiah*, we stated the facts as follows:

"Defendant * * * was indicted on October 3, 1960 * * *.

On October 11, 1960, before he procured or was assigned counsel, defendant *voluntarily made* an oral *confession* in the presence of a deputy sheriff and an assistant prosecuting attorney while riding around in the sheriff's automobile searching for the gun used in the holdup.'' (Emphasis added.)

We affirmed the conviction, but the United States Supreme Court summarily reversed, citing *Massiah*. Thus it is quite clear that where the police elicit a confession from an indicted defendant in the absence of counsel, such confession may not be used at that defendant's trial in a state court, even if the confession was voluntarily made.

But it would seem that the *Massiah-McLeod* right to counsel—like all constitutional rights—can be waived if the accused acts knowingly and intelligently. In *State* v. *Arrington*, 3 Ohio St. 2d 61 (1965), this court held that a postindictment confession, voluntarily made, but in the absence of counsel, was nevertheless admissible into evidence at trial because prior to the confession the accused ''was not only fully informed of his rights but also * * * was well aware of them and intelligently waived them.''

In the case at bar, the confession was made after the indictment and in the absence of counsel. But was the defendant fully informed of his rights, and did he knowingly and intelligently waive them? Whether the police fully informed the defendant of his rights is shrouded in doubt. However, defendant's testimony that he did not waive them is undisputed. See *Haynes* v. *Washington, supra*. The defendant testified that ''one officer got pretty hot when I insisted I wanted to see my lawyer. I said I didn't have nothing to say, I wanted to see my lawyer.'' It is apparent then that *Arrington* is distinguishable.

Therefore, since the February confession was obtained by the police after the indictment and in the absence of counsel, as in *Massiah* and *McLeod,* and since there was no knowing and intelligent waiver of the accused's constitutional rights but rather a demand that they be honored in contrast to *Arrington,* it was error to admit testimony concerning that confession into evidence.

The *Massiah* mandate is applicable to cases, like the case at bar, which are pending on direct appeal. This is

evident from the Supreme Court's application of *Massiah* in the *McLeod* case which arose more than three years before *Massiah* was announced.

However, did defendant fail to preserve the constitutional error for review when he did not make a specific objection on the grounds of *Massiah* and *McLeod*? No. The trial took place in April 1964. *Massiah* was announced on May 18, 1964. Therefore, the *Massiah* and *McLeod* cases could not have been asserted in argument at the trial because that rule had not yet been announced. In *O'Connor* v. *Ohio*, 17 L. Ed. 2d 189 (1966), the United States Supreme Court held that the failure of counsel to object was excused where the federal constitutional right in question (in that case it was *Griffin* v. *California*, 380 U. S. 609) had not yet been announced. Accord, *State* v. *Jones*, 4 Ohio St. 2d 13 (1965) (concurring opinion); *Toledo* v. *Reasonover*, 5 Ohio St. 2d 22 (1966) (dissenting opinion); *State* v. *O'Connor*, 6 Ohio St. 2d 169 (1966) (dissenting opinion). The Supreme Court said that "defendants can no more be charged with anticipating the *Griffin* decision than can the states." In the case at bar, we cannot charge the defendant with anticipating *Massiah* since even after it was announced we held that the mandate was inapplicable to confessions made "in the known presence of public officers." *State* v. *McLeod*, 1 Ohio St. 2d 60, 61.

The use of the February confession at trial constituted error. Was that error harmless or was it prejudicial? The January confession and the February confession were substantially the same. Both indicated that defendant traveled to New York City to acquire narcotics. Thus, under Section 2945.83 of the Revised Code it would seem that since there is substantial evidence to support the guilty verdict even after the tainted evidence is cast aside, we should affirm. However, under *Fahy* v. *Connecticut*, 375 U. S. 85 (1963), and *Chapman* v. *California*, 87 S. Ct. 824 (decided February 20, 1967), we are refused that course of action. In *Fahy*, the court said that when constitutionally inadmissible evidence has been admitted, a reversal is required where "there is a reasonable *possibility* that the evidence complained of *might have contributed* to the conviction." (Emphasis added.) In *Chapman*, the court made it clear that the *Fahy* rule applied to federal constitutional errors *in spite of a state*

*harmless-error statute to the contrary.* Since there is no question that the February confession might have contributed to the conviction since the testimony relevant thereto constituted a very substantial portion of the state's case in chief, we must reverse and remand for a new trial free of such constitutional infirmity.

The defendant claims that it was also prejudicial error for the trial court to admit into evidence the rebuttal testimony of a police officer who testified that Jinks told him that the heroin found in the restaurant on December 28, 1963, belonged to the defendant. It should be noted that in the state's case in chief two other officers testified to the same statement. At no time did defense counsel voice an objection, general or specific. The objection he now makes to this court on the grounds that it was hearsay comes too late. The rules as to the admission and exclusion of hearsay evidence are of ancient origin. Thus, unlike *O'Connor* v. *Ohio,* where the rules had not yet been made known, the defendant may be charged with knowing the rules. Moreover, the silence of defense counsel may well have been intentional since he intimated to the jury, during the direct examination of Jinks, that the state's officers had induced Jinks to make a false statement for their use even though Jinks repeatedly told them it was lie. Counsel may well have thought that it was tactically advantageous to smear the prosecution rather than to exclude the hearsay statements related during the state's case. See *Henry* v. *Mississippi,* 379 U. S. 443 (1965). The assignment of error is not well taken.

However, for the reasons stated above, the judgment of the Court of Appeals is reversed and the cause is remanded for a new trial in accordance with this opinion.

*Judgment reversed.*

MATTHIAS, O'NEILL, and SCHNEIDER, JJ., concur.

TAFT, C. J., concurs in paragraphs four and six of the syllabus and in the judgment.

ZIMMERMAN and BROWN, JJ., concur in paragraphs one, two, three, four and six of the syllabus but dissent from paragraph five thereof and from the judgment.